UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LONGVIEW FIBRE COMPANY,

                                Plaintiff,

                v.                                        6:05-CV-366

CSX TRANSPORTATION, INC., and
CSX CORPORATION,

                                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CSX TRANSPORTATION, INC.,

                        Third-Party Plaintiff,

                v.

HANSEN & RICE, INC., CFI CONSTRUCTION,
INC., and CT MALE ASSOCIATES, P.C.,

                        Third-Party Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

WHITEMAN OSTERMAN & HANNA L.L.P.         MARGARET J. GILLIS, ESQ.
Attorneys for Plaintiff Longview Fibre Company   CHRISTOPHER W. MEYER, ESQ.
One Commerce Plaza
Suite 1900
Albany, New York 12260

HODGSON RUSS L.L.P.                      LAWRENCE R. BAILEY, JR., ESQ.
Attorneys for Defendant CSX Corporation and   NOREEN D. GRIMMICK, ESQ.
  Defendant/Third-Party Plaintiff CSX
  Transportation, Inc.
60 East 42nd Street
37th Floor
New York, New York 10165

ROCHE CORRIGAN McCOY & BUSH             SCOTT W. BUSH, ESQ.
Attorneys for Third-Party Defendants
  Hansen & Rice, Inc., and CFI Construction, Inc.
36 Pearl Street

Albany, New York 12207

HARTER SECREST & EMERY L.L.P.       MICHAEL A. DAMIA, ESQ.
Attorneys for Third-Party Defendant CT Male
  Associates, P.C.
1600 Bausch & Lomb Place
Rochester, New York 14604-2711

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Longview Fibre Company ("Longview" or "plaintiff") brings this negligence action against defendants CSX Transportation, Inc., and CSX Corporation (collectively "CSX" or "defendant"). CSX brings a counterclaim against Longview for negligence and a third-party negligence action against third-party defendants Hansen & Rice, Inc. ("Hansen"), CFI Construction, Inc. ("CFI"), and CT Male Associates, P.C. ("CT Male"), (collectively "third-party defendants").[1] Also, Longview brings crossclaims for negligence against the third-party defendants Hansen and CFI.

Longview moves for partial summary judgment under Federal Rule of Civil Procedure 56. CSX opposes. The third-party defendants do not oppose. Oral argument was heard on August 23, 2007, in Albany, New York. Decision was reserved.

## II. FACTS

Plaintiff Longview, a State of Washington corporation with its principal place of business in Washington, is in the business of manufacturing cardboard and other corrugated

---

[1] CSX also brought a third-party negligence action against Larry Czajkowski ("Czajkowski"); however, Czajkowski has since been dismissed from this action. See Longview Fibre Co. v. CSX Transp., Inc., No. 6:05-CV-366, 2006 WL 3751327 (N.D.N.Y. Dec. 19, 2006).

paper packaging products.  Defendant CSX, a State of Virginia corporation with its principal place of business in the State of Florida, operates the largest railroad in the eastern United States.

Longview has a plant in Amsterdam, New York ("Longview plant").  The southern[2] border of the Longview plant property abuts a narrow strip of land which abuts the Mohawk River.  That narrow strip of land, on which sit railroad tracks that run in an easterly and westerly direction along the Mohawk River, is owned by CSX.  A tributary runs in a southerly direction along the eastern border of the Longview plant property.  The tributary runs underneath the railroad tracks and into the Mohawk River by way of two thirty-six inch drainage culverts.  The two culverts are located on CSX's property.  Former third-party defendant Larry Czajkowski ("Czajkowski") owns the property directly to the east of the tributary.  Below is a rough representation of the relevant properties in relation to each other:



---

[2] Directional references throughout this decision are approximate.

In February 2001, Longview entered into a contract with third-party defendant Hansen & Rice, a foreign contracting and construction corporation with its principal place of business in the State of Idaho, for the design and construction of an addition to the Longview plant. Hansen & Rice contracted with third-party defendant and New York construction company CFI for the removal and export of soil from the construction site, which was located in the southeastern portion of the Longview plant property. CFI removed soil from the construction site and deposited it on the Czajkowski property. Czajkowski, Longview, and Hansen & Rice deny that they were aware of CFI's actions in depositing the soil on the Czajkowski property.

Hansen & Rice also contracted with third-party defendant and New York architecture and engineering firm CT Male in connection with the construction of the addition to the Longview plant.

On March 26, 2002, a heavy storm hit Amsterdam, New York. Over two inches of precipitation, in the form of rain, freezing rain, and sleet, fell over a thirteen-hour period. In that region, storms of that intensity occur approximately once every two years. When the storm hit, there was approximately one inch of hard-packed snow, or snowpack, on the ground.

During the storm, the two culverts on CSX's property backed up and the area became flooded. The flooding caused damage to both CSX's and Longview's property. Particularly, CSX claims that its tracks were damaged and Longview claims that the plant itself, inventory, and office supplies and contents were damaged and that it sustained lost revenues and business income.

That same day, Longview informed CSX of the blocked culverts and consequent flooding.  Also that day, CSX employee Tom Dorn sent an email to three fellow CSX employees and Longview employee Edward Poulin ("Dorn email") which stated that he "[r]eceived a request from Longview Fibre that they have water backing up to their facility in Amsterdam, NY due to a plugged culvert drainage pipe in under track [sic]."  (Poulin Decl. ¶ 15, Ex. E.)[3]

Two days after the flood, a CSX claims representative Patrick Varcasia ("Varcasia") arrived to inspect for damage to CSX property.  At that time, he walked through part of the Longview plant with Longview employee Scott Stevens ("Stevens").  Varcasia claims he was never made aware of any flood damage at the Longview plant.

On or about April 10, 2002, Varcasia informed Stevens by telephone that CSX would be sending a letter to Longview (as well as others) accusing it of being at fault for the damage to CSX property caused by the flood.  During this conversation, Stevens asked Varcasia what CSX planned to do to ensure that similar incidents would not re-occur and Varcasia indicated that CSX did not plan to do anything because remedial action might suggest culpability.

In late April 2002, pursuant to the instruction of the Occupational Safety and Health Administration ("OSHA"), Longview remediated the flooded areas of its plant.

In August and September 2003, Longview notified CSX that it would pursue a claim against it for damages.  CSX then mailed a notice of claim form to Longview, which Longview

---

[3] In its response to Longview's Local Rule 7.1 Statement, wherein Longview asserts that Dorn sent the email and then recites its contents, CSX merely states "Denied."  However, CSX has produced no evidence calling into question the validity of the Dorn email, a copy of which Longview has submitted as evidence.  Therefore, CSX's half-hearted effort at disputing the validity of the Dorn email will be ignored.

completed and returned in February 2004.  On February 24, 2005, Longview filed a

summons and complaint against CSX in New York State Supreme Court, Fulton County.

CSX removed the action to federal district court on diversity grounds[4] and asserted the

counterclaim against Longview for damages to its property as a result of the flood.

## III.  DISCUSSION

Longview moves for partial summary judgment: (A) dismissing the "act of God"

affirmative defenses asserted by CSX, Hansen, and CFI; (B) dismissing the negligence

affirmative defenses and counterclaims asserted by CSX and third-party defendants to the

extent that they allege that Longview is liable for the negligence of third-party defendants in

the design and construction of the addition to the Longview plant; (C) granting sanctions for

spoliation of evidence by CSX; and (D) dismissing the spoliation affirmative defense asserted

by CSX.

Summary judgment is granted only if there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City

Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991).  "The party seeking summary

judgment bears the burden of establishing that no genuine issue of material fact exists and

that the undisputed facts establish her right to judgment as a matter of law."  Rodriguez v.

City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would

---

[4] Since this is a diversity action, the choice of law principles of the forum state, New York, are
used to determine which state's substantive law applies in this action.  See Erie R.R. v. Tompkins, 304
U.S. 64, 78, 58 S. Ct. 817, 822 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S.
Ct. 1020, 1021-22; Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006).  Since the parties agree
that the substantive law of New York governs this action, and the choice of law principles of New York
support that position, no choice of law analysis is required.

"affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

### A. Act of God Affirmative Defenses

"Fundamentally, an act of God is an unusual, extraordinary and unprecedented event." Prashant Enters., Inc. v. State of New York, 206 A.D. 2d 729, 730 (N.Y. App. Div. 3d Dep't 1994). It is one that denotes "'those losses and injuries occasioned exclusively by natural causes, such as could not be prevented by human care, skill and foresight. . . . If there be any co-operation of man, or any admixture of human means, the injury is not, in a legal sense, the act of God.'" Id. (quoting Michaels v. N.Y. Cent. R.R. Co., 30 N.Y. 564, 571 (1864)). To be sure, the burden of proving the occurrence of an act of God rests with the party asserting the defense. Id. at 731-32.

In this case, it is undisputed that on March 26, 2002, a heavy storm hit Amsterdam, New York, during which approximately two inches of precipitation fell over a thirteen-hour period. It is also undisputed that storms of that intensity occur approximately once every two years in that region. A two-year storm and any natural consequences thereof, including flooding, are not unusual, extraordinary, or unprecedented and, thus, are not acts of God.

See <u>Prashant Enters.</u>, 206 A.D. 2d at 731 (suggesting that anything less than a five-year storm is not an act of God).

However, CSX does not argue that the occurrence of the storm alone was an act of God; rather, it argues that the occurrence of the storm while there was one inch of snowpack on the ground was an act of God because the snowpack "substantially increased the amount of runoff water that would normally occur for a typical two-year event storm."  (CSX's Mem. 4.)  In support of that argument, CSX relies on the expert testimony of civil engineer Valerie Hrabal.  During Hrabal's deposition, the following exchange took place:

> Q    Did you do any work to determine whether this was an intense storm of short duration which produced peak rates of runoff and volumes higher than one would expect from a typical regional storm?
> A    The only way to determine that for sure is by gauge flow data and rainfall gauge data in the watershed where the event happened.
> Q    And did you review any of that data?
> A    There is no data.

(Pl.'s Notice of Mot. Ex. O (Hrabal Dep.) at 69-70.)  Moreover, after testifying that the snowpack substantially increased the amount of runoff that would normally occur as a result of a two-year storm, Hrabal admitted that she had not quantified that increase.  <u>Id</u>. at 74-75. Thus, Hrabal's testimony does not raise a genuine issue of material fact as to whether the occurrence of the storm, while there was one inch of snowpack on the ground, was an act of God.

Even if Hrabal had used relevant data to quantify the runoff, and her calculation showed that it was indeed substantially more than what would normally occur during a two-year storm, CSX could still not defeat Longview's summary judgment motion.  Anyone who is fortunate enough to call Upstate New York their home can tell you that it is not unusual,

extraordinary, or unprecedented for there to be one inch of snowpack on the ground in late March.  In fact, it is quite common.  Since it is also not unusual, extraordinary, or unprecedented for a two-year storm to hit the area in late March, it follows that it is not unusual, extraordinary, or unprecedented for both events to occur simultaneously.  Thus, the occurrence of the storm while there was one inch of snowpack on the ground was not an act of God.

Therefore, Longview's motion for summary judgment dismissing the act of God affirmative defenses of CSX and Hansen and CFI will be granted.

## B.  Negligence Affirmative Defenses and Counterclaim

Longview argues that it cannot be held liable for the third parties' alleged negligent conduct – namely, their conduct in exporting soil from the construction site to the property located immediately east of the Longview plant property – because they were independent contractors and Longview neither directed nor took an affirmative, active part in the commission of that conduct.

Under New York law, "an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work."  Cubby, Inc. v. CompuServe, Inc., 776 F. Supp. 135, 142 (S.D.N.Y. 1991) (internal quotation marks omitted).  "Control of the method and means by which the work is to be done . . . is the critical factor in determining whether one is an independent contractor or an employee for the purposes of tort liability."  Berger v. Dykstra,  203 A.D.2d 754 (N.Y. App. Div. 3d Dep't 1994).  "The general rule is that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent

contractor's negligent acts." <u>Kleeman v. Rheingold</u>, 81 N.Y.2d 270, 273 (1993).  However, there are exceptions to the general rule.  A party who retains an independent contractor can be held liable for the independent contractor's negligent acts where: (1) the party negligently selected, instructed, or supervised the contractor; (2) the employment was for work that is inherently dangerous; and (3) the party was under a specific nondelegable duty.  <u>Id</u>. at 274 (citing sources).

CSX argues that Longview supervised, directed, or controlled the allegedly negligent conduct of third-party defendants.  In support of its argument, CSX cites to various provisions of the contract between Longview and Hansen which show that Longview retained the right to, among other things, inspect Hansen's records and work, approve of subcontractors, and require compliance with safety regulations.  However, those provisions do not necessarily mean that Longview exerted direction or control over the third-party defendants' allegedly negligent actions.  Indeed, provisions of that type are common in agreements between companies and independent contractors.  CSX also points to a slew of facsimile transmissions and other correspondence between various parties which they assert demonstrates Longview's control over the third-party defendants' actions.  However, those documents do not support CSX's position.  The key consideration is whether Longview actually asserted control over third-party defendants' allegedly negligent conduct; namely, depositing soil too close to the tributary.  CSX has not produced evidence which raises a genuine issue of material fact with respect to that consideration.

Therefore, Longview's motion for summary judgment dismissing the negligence affirmative defenses and counterclaims of CSX and third-party defendants to the extent that they allege that Longview is liable for the negligence of third-party defendants in the design

and construction of the addition to the Longview plant will be granted.  This, of course, does not eliminate the affirmative defenses and counterclaims alleging Longview's own negligence or comparative negligence.

### C.  Spoliation Sanctions

A party seeking sanctions for the spoliation of evidence must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Residential Funding Corp. v. Degeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)).  The obligation to preserve evidence arises when the party in possession of the evidence has express or constructive notice that it is relevant to pending or reasonably foreseeable litigation.  See Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); Houlihan v. Marriott Int'l, Inc., No. 00 Civ. 7439, 2003 WL 22271206, *1 (S.D.N.Y. Sept. 30, 2003).  "[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'"  Residential Funding Corp., 306 F.3d at 108 (quoting Byrnie, 243 F.3d at 109) (alterations in original).  Finally, a party can show that the spoliated evidence was relevant by proving its relevance through deposition testimony or other evidence, or by showing that the evidence was destroyed in bad faith or with gross negligence.  Id. at 109.

The allegedly spoliated evidence consists of (1) CSX track inspection reports, and (2) a CSX file on the flooding incident at the Longview plaint property ("Longview file") kept by former CSX Roadmaster Paul Williams ("Williams").  The track inspection reports were

maintained for one year then destroyed pursuant to CSX's record retention policy. Williams left the Longview file in his desk drawer upon his retirement in 2004, but it has since disappeared.

At the outset, it must be determined whether the allegedly spoliated evidence was relevant to any claims or counterclaims in this action.

First, It is undisputed that every other day from 2000 until 2004 – the period of Williams's tenure as Roadmaster – CSX track inspectors inspected the railroad tracks that run past the Longview plant property. It is also undisputed that the track inspectors generally submitted written reports to Williams after each inspection. The track inspectors were responsible for inspecting and reporting on the condition of the actual tracks themselves (i.e., whether there were broken rails, ballast, debris, etc.) as well as any unusual conditions in the vicinity of culverts, including "[v]egetation, debris, stone washed down, ballast washed down in the spillway." (Pl.'s Notice of Mot. Ex. K (Williams Dep.) 30.)

Second, it is undisputed that the Longview file contained weather reports from the internet and newspapers, overtime hours worked by CSX crew in clearing the culvert after the storm, and information about the contractors and equipment used in clearing the culvert after the storm. The documentation in the Longview file related to the work performed by CSX and contractors in clearing the culvert likely contained information relevant to causation and damages with respect to both Longview's negligence claim and CSX's negligence counterclaim.

Thus, both the track inspection reports and the Longview file were relevant to this action.

The next step is determining whether CSX had an obligation to preserve that evidence which, as stated above, arises when the party in possession of the evidence has express or constructive notice that it is relevant to pending or reasonably foreseeable litigation.  CSX was aware on March 26, 2002 – the day of the flooding incident – that its culverts were blocked and water was backing up into the Longview plant.  (See Poulin Decl. ¶ 15, Ex. E.)  Moreover, on April 10, 2002, CSX advised Longview that it was making a claim against it for damages caused by the flooding.  Longview did not formally notify CSX that it would pursue its claim for damages until August 2003.  These facts demonstrate that a duty to preserve the track inspection reports and the Longview file arose, at the very latest, on April 10, 2002.  CSX argues that although it informed Longview of its intent to pursue a claim for damages on April 10, it had no knowledge that Longview sustained damages as a result of the flooding incident.  This contention is belied by the existence of the Dorn email. However, even if Longview did not sustain any damages as a result of the flooding incident and therefore had no claim against CSX, the track inspection reports and Longview file is relevant to Longview's defense of the counterclaim for damages pursued by CSX. Therefore, CSX had a duty to preserve the track inspection reports and Longview file but failed to do so.

Finally, it must be determined whether CSX destroyed the evidence with a culpable state of mind.  It is undisputed that CSX destroyed the track inspection reports pursuant to its records retention policy.  Thus, it did so knowingly, even if without intent to breach a duty to preserve them.  Upon retiring, Williams left the Longview file in his desk drawer together with all other "incident" files.  According to Williams, it was CSX procedure to keep such "incident" files in this manner.  Thus, the evidence indicates that CSX disposed of or misplaced the

Longview file either knowingly or negligently, but in any event with the necessary state of mind.

Therefore, Longview's motion for sanctions will be granted and CSX will be precluded from offering testimony at trial concerning (1) any track inspection for which the reports have been lost, and (2) matters contained in the missing Longview file. Longview's request that the jury be given an adverse inference instruction will be addressed at the time of trial.

### D.  Spoliation Affirmative Defense

In its answer to Longview's complaint, CSX asserts that Longview "failed to give [CSX] due notice of its alleged damages and failed to provide [CSX] with the opportunity to inspect and assess said alleged damage," and that Longview "has failed to protect and preserve necessary evidence, by reason of which [Longview] is guilty of spoliation of evidence." (CSX's Answer to Pl.'s Compl. ¶¶ 22-23.)  In its memorandum of law, CSX clarifies its position by stating that it does not allege or argue that Longview is guilty of spoliation by virtue of its remediation of the flood damage; rather, it argues that Longview is guilty of spoliation for failing to give CSX due notice of its damages and provide CSX with the opportunity to inspect and assess those damages.  However, CSX has not even attempted to show that any of the three spoliation factors are satisfied in this case.  (See Pt. III.C supra.) Moreover, the evidence submitted by Longview indicates that CSX was aware that Longview sustained damage as a result of the flooding incident well before remediation took place. (See id.)

Therefore, Longview's motion for summary judgment dismissing CSX's spoliation affirmative defense will be granted.

## IV. __CONCLUSION__

Since third-party defendants do not oppose Longview's motion for partial summary judgment, Longview's motion will be granted as it relates to those parties.  Longview's motion with respect to CSX will be granted because (A) the occurrence of the storm while there was one inch of snowpack on the ground was not an act of God; (B) CSX has not produced evidence showing that Longview actually asserted control over third-party defendants' allegedly negligent conduct; (C) CSX is guilty of spoliation of the track inspection records and Longview file; and (D) CSX failed to demonstrate that Longview is guilty of spoliation of evidence.

Accordingly, it is

ORDERED that

1.  Longview's motion for partial summary judgment is GRANTED;

2.  CSX's, Hansen's, and CFI's act of God affirmative defenses are DISMISSED;

3.  CSX's, Hansen's, CFI's, and CT Male's negligence affirmative defenses are DISMISSED to the extent that they allege that Longview is liable for the negligence of third-party defendants in the design and construction of the addition to the Longview plant;

4.  CSX's negligence counterclaim is DISMISSED to the extend that it alleges that Longview is liable for the negligence of third-party defendants in the design and construction of the addition to the Longview plant;

5.  CSX will be PRECLUDED from offering testimony at trial concerning (1) any track inspection for which the reports have been lost, and (2) matters contained in the missing Longview file; and

6.  CSX's spoliation affirmative defense is DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  December 20, 2007
        Utica, New York.